CHARLES R. GODDARD & others *vs.* CITY OF LOWELL
& others.

Middlesex.    May 23, 1901. — September 5, 1901.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Municipal Corporations*, Prohibitions upon city council in amended charter of Lowell.
*Contract*, Validity.

In the amended charter of the city of Lowell, St. 1896, c. 415, § 3, creates a de-
partment of supplies, and § 7 prohibits the city council from taking part in the
purchase of material or in the making of contracts for the city. In the year
1900 the city council of Lowell passed an ordinance approved by the mayor,
providing, "That all printed matter for the city of Lowell shall hereafter bear
the imprint of the Union Label of the Allied Printing Trades Council of Lowell,
Mass." and " That in calling for bids for city printing hereafter, the chief of the
department of supplies shall make stipulation in accordance with" the fore-
going requirement. The board of health of Lowell advertised for bids for print-
ing certain blanks and letter heads, and accepted a bid of $24.50 from a bidder
who had a right to use the union label, declaring by vote that they did so for
that reason, and rejecting a bid of $16.55 from a bidder who had not the right
to use the label. On a petition of more than ten taxable inhabitants under St.
1898, c. 490, to enjoin the payment of money by the city under the contract, it
was *held*, that the ordinance was invalid, as an attempt to interfere in the mak-
ing of contracts for printing, by directing with whom the contracts should be
made, and was in direct conflict with the provisions of the amended charter;
that, whether the ordinance applied to the board of health or not or whether or
not they called for bids in accordance with it, the fair inference was that in
awarding the contract that board did not exercise their untrammelled judgment
but were controlled by the illegal behest of the ordinance which they supposed
to be binding upon them ; so that the contract was void and the money of the
city was about to be illegally expended, which brought the case within St. 1898,
c. 490.

PETITION under St. 1898, c. 490, by more than ten taxable
inhabitants of the city of Lowell, the first named being the
lowest bidder hereafter mentioned, against that city, its treas-
urer, its board of health and the Courier-Citizen Company, to
enjoin the payment of money by the city to the company named
under a contract made with that company by the board of health
and alleged to be illegal, filed February 21, 1901.

In the Superior Court, the case was heard by *Sheldon*, J.,
who, at the request of the parties, reported it for the determi-

nation of this court, such decree to be entered as justice and equity might require.

It appeared by the report, that, a demurrer to the petition having been overruled, the respondents by their answer and by subsequent agreement admitted the truth of the following allegations of fact contained in the petition :

That the City Council of Lowell passed an ordinance approved by the mayor on December 15, 1900, entitled "An Ordinance providing for the printing of the Union Label on all printing for the City of Lowell," which ordinance was as follows:

"Section 1. That all printed matter for the City of Lowell shall hereafter bear the imprint of the Union Label of the Allied. Printing Trades Council of Lowell, Mass.

"Section 2. That in calling for bids for city printing hereafter, the Chief of the Department of Supplies shall make stipulation in accordance with Section 1 of this ordinance.

"Section 3. This ordinance shall take effect upon its passage."

That the "Union Label" referred to in the foregoing ordinance was a device the use of which in Lowell was controlled or assumed to be controlled, by a voluntary association called the "Allied Printing Trades Council, Lowell, Mass.," which permits the use of the label only by printers and printing houses who employ exclusively as compositors and pressmen members of "The Typographical Union," so called, and the "Printing Pressmen's Union," so called, and that, if the terms of the ordinance are observed and enforced, the effect of the ordinance is that no printing for the city of Lowell can be done except by printers who employ exclusively as compositors and pressmen members of the two last named voluntary associations; that on or about February 7, 1901, the board of health of Lowell, by one Horace H. Knapp, their agent, solicited certain printers in Lowell, including the defendant Courier-Citizen Company and the plaintiff Charles R. Goddard, doing business under the name of The Butterfield Printing Company, to submit bids for the printing of sundry blanks, letter-heads and note-heads, and the Courier-Citizen Company, in response to this solicitation offered to do the printing for the sum of $24.50, and the Butterfield Printing Company, in response to the solici-

tation offered to do the same printing for the sum of $16.55, which last named offer was the lowest bid received for the printing by the board of health; that the Courier-Citizen Company employs exclusively as compositors and pressmen members of the two unions last named and has the right to use the label above mentioned, while the Butterfield Printing Company does not employ exclusively members of those unions and does not have the right to use the label; and that on February 19, 1901, the board of health awarded the contract to the Courier-Citizen Company.

In addition to the allegations of fact admitted as above, the judge reported the following evidence: The petitioners introduced in evidence the record of a meeting of the board of health of the city of Lowell, held February 19, 1901. This record was as follows:

" Lowell, Mass., February 19, 1901, 4.30 P. M. Regular meeting of board, all members present. Records of last meeting read and approved. The following bids for printing the following articles were read: 500 Blanks, sample No. 1; 500 Blanks, sample No. 2; 500 Blanks, sample No. 3; 2 Reams Letter Heads, No. 4; 1 Ream ½ Letter Heads, No. 4; 2 Reams Letter Heads, No. 5; 1 Ream Letter Heads, No. 6; 1 Ream Letter Heads, N. 6; 1,000 Plumbing Applications, No. 7.

"The Union Printing Company, $33.80; The Lawler Printing Company, $30.65; O. A. Libby, $29.35; Lowell Sun, $24.50; Courier-Citizen Company, $24.50; Butterfield Printing Company, $16.55.

" On motion it was voted to award the printing to the Courier-Citizen Company, as they use the Union Label, prescribed and voted by the Lowell City Council, Dec. 15, 1900. Approved, John H. McGuinness, Secretary."

It was agreed that the Lawler Printing Company and the Courier-Citizen Company above named were authorized by the " Allied Printing Trades Council of Lowell, Mass.," to use the " Union Label," so called, and that the other printers and printing companies above named were not so authorized.

The respondents introduced evidence tending to show, that the actual cost of doing the work under the contract in question would have exceeded the sum of $16.55; but the judge found that not to have been the fact.

It was agreed by counsel, that in calling for bids there was no discrimination by the board of health against the non-union printing offices.

St. 1896, c. 415, is an act to amend the charter of the city of Lowell.

Section 3 creates a department of supplies and provides for the election of the chief of this department by the voters of the city at the annual municipal election.

Section 6 begins as follows: "The heads of the several departments and offices shall have the general charge and management of all matters pertaining to their respective departments, and shall make and execute all contracts necessary therefor, except for the purchase of material and supplies; but every contract made as aforesaid in which the amount involved exceeds three hundred dollars shall be approved by the mayor before going into effect."

Section 7 is as follows: "Neither the city council nor either branch thereof, nor any committee or member thereof, shall directly or indirectly take part in the employment of labor, the purchase of material, the construction, alteration or repair of any public works or other property, or in the care, custody or management of the same, or in general in the expenditure of public money or in the conduct of the executive or administrative business of the city, except as may be necessary for defraying the contingent and incidental expenses of the city council or of either branch thereof; nor shall they or either of them take part in the making of contracts."

*H. A. Brown,* for the petitioners.

*F. W. Qua,* for the respondents.

HAMMOND, J.    St. 1896, c. 415, provides that in the city of Lowell there shall be a "department of supplies," that the chief of such department shall be elected by the people at the annual municipal election, and shall hold office for the next municipal year thereafter subject to removal by the mayor, "for such cause as he shall deem sufficient," and that all material and supplies for the city shall be purchased by him subject to the approval of the mayor. §§ 2, 3.    It further provides that "neither the city council nor either branch thereof, nor any committee or member thereof, shall directly or indirectly take

part in the . . . purchase of material," with certain exceptions not here pertinent, "nor shall they or either of them take part in the making of contracts." § 7. This statute works a great change as to the powers of the city council in the matter of making contracts. See *Muldoon* v. *Lowell*, 178 Mass. 134, 138. The ordinance of December 15, 1900, is plainly an attempt to interfere in the making of contracts for printing, by directing with whom the contract shall be made. It is in direct conflict with the statute, and is invalid for that reason alone. It therefore becomes unnecessary to consider the other and broader grounds upon which the petitioners attack it.

It is argued by the respondents that the ordinance does not apply to the board of health, and that the fact that the board invited bids from union and non-union men alike shows that they did not consider themselves bound by it. The board of health had before it bids from five different parties. The lowest bidder could not use the label prescribed by the ordinance. The two next lowest bids were equal in amount, and of these bidders one could use the label and one could not. In this state of things the board passed over the lowest bidder, and of the next two lowest bidders awarded the contract to that one, a company, who could use the label, and the record shows that it was voted to award the contract to that company "as they use the Union Label, prescribed and voted" by the ordinance. They give no other reason for their action, nor does it appear that there was any other reason. The only fair and natural inference is that in thus awarding the contract they felt bound by the ordinance and did not feel at liberty to exercise their own judgment as against it, and that they desired to make this appear on their records; and this is so whether or not the ordinance was applicable to them or whether or not they called for bids in accordance with it. It thus appearing that in awarding this contract they did not exercise their untrammelled judgment but were controlled by an illegal behest which they supposed to be binding upon them, it is clear that the contract ought not to stand. It is not legal because not made as the law requires, and no city official may properly expend money to carry it out. The respondents are about to expend money under it. In the language of St. 1898, c. 490, they are about to expend money in

a manner other than that in which such city has the legal right to expend money. The case is within the statute.

*Decree for the petitioners.*