Jacob M. Weiss et al., and Iowa-Nebraska Light & Power Company, a Corporation, Appellants, v. Incorporated Town of Woodbine et al., and Fairbanks-Morse & Company, a Corporation, Appellees.

No. 45089.

2

JANUARY 9, 1940.

REHEARING DENIED JUNE 20, 1940.

Lee & Sheldahl and Frank P. Brennan, for appellants.

Geo. A. Rice and Wm. L. Hassett, for appellees.

MILLER, J.—This is a suit in equity brought by the Iowa-Nebraska Light and Power Company, together with two indi-

vidual citizens and taxpayers, to enjoin the defendants, Incorporated Town of Woodbine, the town council, and Fairbanks-Morse & Company, the successful bidder, from constructing an electric light and power distribution system on the theory that the proceedings of the town, pursuant to which the contract for such construction was awarded, are invalid. Numerous grounds are asserted in the petition, as amended. The answer was a general denial. Testimony was introduced and the matter being fully submitted, the court entered a decree finding generally in favor of the defendants and dismissing the petition, as amended. Plaintiffs appeal to this court and assert nine propositions as grounds for reversal.

I. Appellants' first three propositions are based upon the contention that the ballot used to submit the proposition to the voters of the town was insufficient to advise the voters of the type of contract contemplated by the town, and eventually awarded to the appellee Fairbanks-Morse & Company. The question contained in the ballot is as follows:

"Shall the Town of Woodbine, Harrison County, Iowa, establish, erect, maintain, and operate, within or without its corporate limits, an electric light and power plant with all the necessary poles, wires, machinery, apparatus and other requisites of said plant; the maximum amount which may be expended for the establishment, construction, or acquisition of such plant shall be $115,000.00; said plant shall be paid for solely out of the future earnings of said plant, and as provided by Sections 6134-d1 to 6134-d7, inclusive, of the 1935 Code of Iowa?"

As the election resulted in an affirmative vote on the above proposition, notice to bidders was given in which the bidders were advised as follows:

"Said improvement being constructed under the authority granted the Municipality by Chapter 312 of the Code of Iowa for 1935, and more particularly by Sections 6134-d1 to 6134-d7, inclusive, and including Sections 6134-f1, 6134-f2, and 6134-f3."

The contract actually awarded to appellee Fairbanks-Morse & Company provided for the issuance of revenue bonds pursuant to sections 6134-f1 to 6134-f3, inclusive, of the Code. It is the contention of appellants that the ballot was only sufficient to advise the voters that the town intended to proceed pursuant to the "d" sections, and was insufficient to advise the voters that the town intended to proceed pursuant to sections 6134-f1 to 6134-f3, inclusive. We find no merit in this contention.

The statute, which is now known as sections 6134-f1 to 6134-f3, inclusive, was enacted as chapter 74 of the Acts of the Forty-fifth Extra General Assembly, "AN ACT amending Section sixty-one hundred thirty-four-d one (6134-d1), Code, 1931." From a legal standpoint, the sections of this chapter of the session laws which have now been identified as the "f" sections following section 6134-d1 of the Code of 1935, are an amendment to section 6134-d1 of the Code of 1931, and, therefore, are a part of sections 6134-d1 to 6134-d7 of the Code of 1935. Such holding seems to be apparent when we consider the holding of this court in the case of Abbott v. Iowa City, 224 Iowa 698, 277 N. W. 437. The ballot which was submitted to the voters of Iowa City is set out in the opinion, 224 Iowa, at page 708, 277 N. W., at page 442, as follows:

" 'Shall the City of Iowa City, Iowa, establish, erect, extend, maintain and operate within or without its corporate limits, an electric light and power plant, with all the necessary poles, wire, machinery, apparatus and other requisites of said plant; the maximum amount which may be expended for the establishment, construction, or acquisition of such plant shall be $917,000 to be paid for out of the future earnings of said plant, and as provided by sections 6134-d1 to 6134-d7, inclusive, of the Code of Iowa, 1931, as amended by * * * Chap. 74 — 45 G. A. * * * 45th General Assembly, Special Session?' "

While the exact proposition now contended for by appellants was not urged upon this court in that case, a reading of our opinion demonstrates that this court accepted that ballot as sufficient to advise the voters of the statutes under which

the city was undertaking to proceed. We can see no valid distinction between the reference in the Abbott case to "sections 6134-d1 to 6134-d7, inclusive, of the Code of Iowa, 1931, as amended by * * * Chap. 74 — 45 G. A." and the ballot here presented which refers to "Sections 6134-d1 to 6134-d7, inclusive, of the 1935 Code of Iowa." It seems to us that, as a matter of law, both references are to the same statutes.

Appellants argue, however, that a voter would be misled by the ballot in that he would naturally assume that the ballot referred only to the "d" sections and the fact that the town secretly intended to invoke the "f" sections was a fraud upon the voters.

Even a casual examination of the Code of 1935 demonstrates that, if one undertakes to read from section 6134-d1 to section 6134-d7, inclusive, after reading section 6134-d1, he is confronted with the "f" sections which are inserted between section 6134-d1 and section 6134-d2. This insertion was made by the code editor in view of the fact that the "f" sections were enacted as an amendment to section 6134-d1. Also, the subhead in the Code, appearing after section 6134 proper, is "Payment from earnings". The "f" sections, as well as the "d" sections, obviously pertain to this subject. Under section 6134-d1, payment may be made from future earnings and the town is authorized to pledge the property and the earnings of the plant as security for the payment of the purchase price. Under section 6134-f1, the cost may be defrayed by the issuance of negotiable interest-bearing bonds, payable from and secured by the net earnings of the plant and may also be secured by the pledge of the property purchased. The "f" sections refer to the same subject matter as the "d" sections, namely, payment from earnings. If a voter examined the 1935 Code and the ballot, which stated, "Said plant shall be paid for solely out of the future earnings of said plant," he would naturally conclude that the language "and as provided by Sections 6134-d1 to 6134-d7, inclusive, of the 1935 Code of Iowa" included all of the statutes there appearing in the 1935 Code,

under the heading, "Payment from earnings", and that it included the "f" sections as well as the "d" sections.

Numerous authorities have been cited to us by the parties to this appeal. We have carefully examined them. They present many interesting propositions. However, it would unduly prolong this opinion to specifically refer to such cases. The only case cited, which appears to be directly in point, is the Abbott case above referred to. We are satisfied from examining all of the cases relied upon that the position taken by us in the Abbott case clearly warrants, if not compels, us to now hold that appellants' objection to the ballot is without merit.

II. Appellants' fourth proposition is based upon the contention that section 6134-f1 of the Code of 1935 is unconstitutional and void because it contravenes the provisions of section 29 of Article III of the Constitution of the State of Iowa, which provides:

"Every act shall embrace but one subject, and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."

The title of chapter 74 of the Acts of the Forty-fifth Extra General Assembly reads as follows:

"AN ACT amending section sixty-one hundred thirty-four-d one (6134-d1), Code, 1931, and providing for the issuance by municipalities of negotiable revenue bonds payable only out of the net earnings of municipally owned public utilities, providing the security for the payment of such bonds and the rate of interest and form of such bonds; providing for the delivery or sale of such bonds and that the same may be used as security for money borrowed to pay the cost of such improvement."

Appellants' contention is that section 6134-f1 constitutes an attempt to amend sections 1172, 1175 and 1179 of the Code without giving expression to such intention in the title. Said statutes provide as follows:

"1172. Notice of sale. When public bonds are offered for sale, the official or officials in charge of such bond issue shall, by advertisement published for two or more successive weeks in at least one official newspaper of the county, give notice of the time and place of sale of said bonds, the amount to be offered for sale, and any further information which may be deemed pertinent.

"1175. Selling price. No public bond shall be sold for less than par, plus accrued interest.

"1179. Exchange of bonds. Nothing in this chapter shall be deemed to prevent the exchange of bonds for legal indebtedness evidenced by bonds, warrants, or judgments as otherwise provided by law."

Section 6134-f1 of the 1935 Code provides as follows:

"For the purpose of defraying the cost of any such plant, improvement or extension thereof, any such city or town is hereby authorized to issue negotiable, interest bearing revenue bonds payable from and secured by the net earnings of the plant, and may also be secured by the pledge of the property purchased, which bonds shall not constitute a general obligation of such city or town or be enforceable in any manner by taxation. Such revenue bonds may be delivered to the contractor or contractors in payment for such improvement or they may be sold by the municipality and the proceeds used to pay for such improvement; and/or such bonds may be used as collateral security for money borrowed to pay the cost of such improvement, such loan to be repaid only out of the net earnings of the plant."

Appellants contend that, by the language of this statute, "Such revenue bonds may be delivered to the contractor or contractors in payment for such improvement", the legislature, under the guise of amending section 6134-d1, attempted to confer upon municipalities the right to barter, trade or exchange revenue bonds for work, material and labor, which could not be done under section 1175 of the Code of 1931, which provides, "No bond shall be sold for less than par, plus accrued

interest'' and that the title to said chapter 74 should have stated more than merely that it was an act ''amending section 6134-d1 Code, 1931 * * * providing for the delivery or sale of such bonds.'' Appellants contend that the title to the act should have stated that it was amending sections 1172, 1175 and 1179, and that the use of the word ''delivery'' does not embrace the terms barter, trade or exchange revenue bonds for work, material and labor.

Appellants rely upon our holding in the case of Iowa Service Co. v. City of Villisca, 203 Iowa 610, 213 N. W. 401. In that case, an injunction was sought to restrain the defendant from constructing an electric light and power plant. Two propositions were presented (1) the legality of the election at which the bonds to pay for the plant were voted, and (2) the legality of the contract. We held that the election was valid and that the bonds were legally issued. The record showed, however, that, when the city offered the bonds for sale, no bids were received, and it thereupon entered into a contract, which provided that the contractor would receive the bonds at par, in payment of the contract price. The city relied upon the provisions of section 6258 of the Code, which permit a city to exchange its bonds for legal indebtedness of the city outstanding when the bonds are authorized. In holding that this statute was not applicable and that the contract was invalid, we state, 203 Iowa, at page 614, 213 N. W., at page 403, as follows:

''The contract under consideration, which purported to dispose of the bonds to the contractors, was not an indebtedness outstanding when the bonds were issued. This being so, the city council had no alternative other than that stated in the concluding clause of that section. The reason for such limitation upon official power is quite manifest. The bonds had failed to sell for par. Whether the contractors expanded their bids in their estimates or discounted the bonds cannot be known. What is certain is that they did not buy the bonds at par. That opportunity had been offered to all the world, without a bidder. The statute limits the power of exchange to indebtedness already liquidated. Such indebtedness is itself a par. The ex-

change of the bonds, therefore, is an exchange of par for par. This cannot be said of a contract entered into which contemplates the acceptance of the bonds in payment for material and labor proposed to be furnished.".

Appellants rely upon the last sentence in the above quotation and construe this sentence as the holding of this court to the effect that any contract, which contemplates the acceptance of bonds in payment for material and labor to be furnished, makes it impossible for the bonds to be sold at par; that the contractors will invariably expand their bids or discount the bonds. The language is perhaps subject to such interpretation, but it must be construed in light of the facts presented by the record which we were then discussing. Under that record, the bonds had failed to sell for par. This fact was the basis for this court's assumption that the contractors either expanded their bids or discounted the bonds. When the decision is considered in light of the facts presented by the record, we do not think that this court intended to or did announce an invariable rule that a contract to exchange bonds for labor and material to be furnished rendered it impossible for the city to secure the par value of the bonds through such an exchange. The legislature, in enacting section 6134-f1, assumed otherwise. We are not prepared to arbitrarily state that the legislature assumed that to be true which is in fact impossible. We are disposed rather to cast the benefit of the doubt in favor of the legislature.

We are also faced with the holding of this court in the case of Iowa-Nebraska Light & Power Co. v. City of Villisca, 220 Iowa 238, 261 N. W. 423, wherein the same appellant that now appears before us raised substantially the same constitutional objection to the original Simmer law. It was there contended that the title to the act was defective in that it did not enumerate all of the statutes which in effect were amended by the act. In holding this contention was without merit, we state, 220 Iowa, at page 244, 261 N. W., at page 427, as follows:

"It is also claimed that the Simmer Law is invalid because it is more properly an amendment to other provisions of the

Code. The test cannot, however, be measured by the fact that the subjects in the act may also be related or germane to some other prior existing act."

In that case, we found that all the matters contained in the act were definitely referred to, connected with or incidental to the subject named in the title and not incongruous thereto. Accordingly, we held that the statute was not subject to the constitutional objection interposed against it, stating, 220 Iowa, at page 244, 261 N. W., at page 427, as follows:

"The Constitution is obeyed if all the provisions relate to one subject indicated in the title, or parts of it, incident to it, reasonably connected with it, or in some sense auxiliary to the object in view. Ritchie v. People, 155 Ill. 98, 40 N. E. 454, 29 L. R. A. 79, 46 Am. St. Rep. 315. We are constrained to hold that the title to the act in question fully and fairly meets the constitutional requirements, and we find no error in the lower court's ruling thereon."

After carefully considering the contentions of appellants, we are disposed to reach the same result under the record herein and, therefore, hold that the title of the act did not constitute a violation of section 29 of Article III of the Constitution of this state.

III. Appellants' eighth proposition is that the contract fails to require retention of 10 percent of the contract price to cover possible claims for labor and material, as required by section 10310 of the Code and is, therefore, void. Counsel rely upon our holding in the case of Keokuk Waterworks Co. v. Keokuk, 224 Iowa 718, 277 N. W. 291. As the contract in that case was held to be valid, we are unable to agree that the decision is authority for appellants' contention that this contract is invalid. Also, under the provisions of section 10311, the statute is read into the contract, made a part thereof, and the public corporation is not permitted to plead noncompliance with section 10310. Under these two sections of the Code, the persons furnishing labor and material are protected without

regard to the express provisions of the contract. Accordingly, the failure to provide for the necessary retained percentage does not render the contract void. Instead, the public corporation is held to obey the requirements of the law and cannot plead its failure so to do as a defense. There is no merit in this contention of appellants.

■ IV. The remaining contentions of appellants concern primarily the question whether or not the contract, which the appellee Town undertook to enter into with appellee Fairbanks-Morse & Company, is invalid because of the failure to properly provide for competitive bidding in the making of the contract. We have recently passed upon the rule requiring competitive bidding in contracts of this kind. Iowa Electric Co. v. Town of Cascade, 227 Iowa 480, 288 N. W. 663. We there point out that, in the case of Electric Light & Power Co. v. Town of Grand Junction, 216 Iowa 1301, 1303, 250 N. W. 136, this court recognized that an improvement such as contemplated herein must be contracted for on a basis of competitive bidding. We also point out that the purpose of competitive bidding is that those who are to be required to pay the expense thereof, shall be given the best work at the lowest practical price. In other words, competitive bidding is required to obtain contracts at the most reasonable, economical and practical cost in having the work economically done. In the Cascade case, we held that, since the reason for the rule was not present, the rule had no application. After a careful consideration of appellants' contentions, we are disposed to hold, under the record here presented to us, that a different result should be reached.

The features of the contract here subject to attack, which are asserted as being disposed to prevent competitive bidding of the character required herein, include among others the following: The contract provided for the delivery of all of the bonds to the contractor; the contractor was required to bid on the basis of doing all of the work and furnishing all of the material required for the project; the contractor was required to advance $8,000 in cash to the town to cover engineering, legal, capital, supplies and incidental expenses. It is appellants' con-

tention that the letting of the contract was had in such a discriminatory manner as to favor monopoly, deny equal opportunity of bidding, and restrict competitive bidding to such an extent that the proceedings should be declared to be invalid.

Bearing in mind that the requirement for competitive bidding is based upon the proposition that the citizens of the town, as users of electricity, should be afforded the best work at the lowest practical price, to avoid undue and excessive costs, guard against improvidence, extravagance and unnecessary burdens and obtain terms at the most reasonable, economical and practical costs in having the work economically done, any feature of the contract which intends to put a heavier burden on the citizens who are to pay for the improvement might tend to defeat the purposes sought to be reached through competitive bidding. However, the rule is not one which can be stated arbitrarily and in rigid terms. The public officials have discretion in the matter.

For example, a specification that a building be fireproof tends to restrict bidding in that other types are eliminated, increases the cost of the improvement and adds a burden to the citizens who are to pay for the improvement, but such a specification does not mean that competitive bidding is unduly interfered with. The same may be said of a specification calling for stone in place of brick, steel in place of reinforced concrete, or numerous other specifications which refer to some specific type of construction or machinery to be furnished in connection with a public improvement. Public officials are not to be harassed by every conceivable objection to the specifications, where a showing might be made that some different type of specification would permit substantially as good an improvement at reduced cost. The public officials have discretion in deciding such engineering questions. All that the rule requires is that, after the type of improvement has been determined in the exercise of honest judgment, the specifications be prepared to permit free competition to bidders thereon. Hoffman v. City of Muscatine, 212 Iowa 867, 232 N. W. 430, 77 A. L. R. 680; Brutsche v. Coon Rapids, 223 Iowa 487, 272 N. W. 624.

But when the type of improvement has been so determined, the specifications must not contain restrictions which stifle competition. 44 C. J. 104. In the case now before us, it would be difficult to pick out any one item of the objections asserted and hold that this item alone is sufficient to demonstrate that unreasonable restrictions on competitive bidding were imposed. It is not necessary for us to decide the case on any such theory because, considering the three objections above specified in their *cumulative* effect, we are satisfied that the proceedings are improper and the contract invalid.

By compelling bids on a combination basis, that is, that the contractor furnish all labor and material called for by the improvement, available bidders were necessarily restricted. The added requirement that the contractor accept the bonds, all of them, as the payment for the contract price, added further restrictions. Under such a setup, it was then necessary to require the contractor to advance to the city $8,000 to cover engineering, legal, capital, supplies, incidental and other expenses. On such a basis, there was further discrimination in favor of a limited class of bidders. The bidder would have to be financially able to build the project and also advance the city $8,000. The bonds were to be accepted at par with accrued interest in strict compliance with the statute, so that the bidder had to be financially able to carry the bonds for a reasonable time at least, should the market be unfavorable. We think that the situation, as a whole, tended too much to favor monopoly, deny equal opportunity of bidding, restrict competitive bidding, and add unnecessary burdens upon those who, in the last analysis, will be required to pay for this public improvement.

In the case of Miller v. City of Des Moines, 143 Iowa 409, 420, 122 N. W. 226, 230, 23 L. R. A., N. S., 815, 21 Ann. Cas. 207, we state:

"Experience has shown that the interests of the taxpayers are best conserved by offering contracts for public work to the competition of all persons able and willing to perform it. When the opportunity to compete is fairly and openly offered, and

contracts are fairly awarded, there is ordinarily no room for official or private graft at public expense; but just in proportion as competition is restricted, and the award is hedged about with express or implied conditions by which a favored person or a favored class is insured a preference over others of equal ability and capacity, public rights are imperiled and public interests are sacrificed. Such discrimination tends to monopoly, and involves a denial of the equality of right and of opportunity which lies at the foundation of republican institutions.''

The purpose for which competitive bidding is required was not accomplished by the procedure here followed. We are, therefore, of the opinion and hold that the objections made by appellants in this regard have merit. On this proposition and this alone, the trial court erred. Accordingly, the decree must be and it is reversed and the cause is remanded with instructions that the injunction prayed for by appellants issue. In the event either of the parties so desire, upon proper application being made to this court, decree will be entered here.—Reversed.

HAMILTON, C. J., and STIGER, BLISS, HALE, and OLIVER, JJ., concur.

RICHARDS, J., dissents.

RICHARDS, J. (dissenting)—Although concurring in the first three divisions of the majority opinion I dissent from division IV and from the reversing of the case. The reasons follow:

In division IV are set out the three features of the contract that, in the opinion of the majority, prevented the competitive bidding the statutes contemplated. The majority concedes that it would be difficult to pick out any one of these features and hold that it alone is sufficient to demonstrate that unreasonable restrictions on competitive bidding were imposed. A further concession should have been made by the majority, namely, that one of these three features of the contract should not be given any consideration at all. For the majority of course recognizes that ''competitive bidding'' is a requisite be-

cause of what appears in section 6134-d4 to section 6134-d6, Code 1935. What these sections require is a publication of notice of the council's intention to adopt plans, specifications, and a proposed form of contract, and the extent of the work and kind of materials for which bids will be received. But in section 6134-f1, a part of the same act, the town was specifically authorized to deliver the revenue bonds to the contractor in payment for the improvement. The providing in the proposed contract, and in the contract later made, that this statutory thing will be done cannot be said to be a procedure that, at least in the legislative mind, impinged on sections 6134-d4 to 6134-d6. That is self-evident. The legislature's intent is to be found in the act as a whole, not by giving piecemeal consideration. And if that is true then one of the three features of the contract, i. e., the delivering of the bonds to the contractor in payment for the improvement, should have been given no consideration by the majority, and this is the additional concession that the majority should have made, clearly and explicitly. So it is that the real question the majority had for decision was whether unreasonable restrictions on bidding were imposed by the two remaining features of the contract, i. e. (a) the requirement that the contractor bid on the basis of doing all the work and furnishing all of the material, and (b) the requirement that the contractor advance $8,000 to cover engineering, legal, capital, and supplies and incidental expenses.

On the trial plaintiffs offered two engineering-expert witnesses. Their testimony pertained to the feature of the contract above identified as (a). They were in agreement that, in the construction of such plants as the one here involved, one engineering practice that is followed is to advertise for bids for construction of the entire improvement under one contract, that another is to advertise for bids for construction of separate portions, and that still another practice is to combine the two first mentioned. But these experts were not of the same opinion respecting the comparative merits of these practices. It would be an imposition to extend this dissenting opinion by detailing the several advantages to the public each engineer claimed

would ensue from following the particular practice he espoused. Nor does so doing seem needful, because the important thing is that the testimony of these witnesses demonstrates that the respective merits of the different practices is a question as to which reasonable minds could readily reach different conclusions. Turning to defendants' evidence it showed that the members of the council made themselves fully acquainted with the alleged advantages and disadvantages inhering in each of these different practices, some members of that body spending time during a number of weeks in journeying to various Iowa towns where like electric plants had been installed and "investigating them from the bottom up." The council also had the specific advice of their attorney respecting the matters. After weighing all this information, the council, exercising its own discretion, decided to advertise for a single bid for the entire improvement. They followed one of the engineering practices used in such cases. They did nothing outside of ordinary course.

The foregoing enables one to realize definitely what plaintiffs were claiming. They concede their claim was not that competitive bidding was eliminated, and admit that bids additional to the one accepted were made for the construction of the whole improvement. So the several prior cases involving the same Act, in which the claims were that there had been no competitive bidding because the accepted bid had been made upon the bidders' own specifications, presented an entirely different question. In its essence plaintiffs' contention in the instant case is founded on the assertion that there would have been *more* bidding had the proposals contemplated separate bids on designated portions of the improvement. Because under such proposals there would allegedly have been more bidding plaintiffs' conclusion is that defendant council acted illegally in advertising for bids for construction of the improvement under one contract.

Whether defendants acted illegally depends not on some engineer's theory, but wholly upon whether they transgressed or exceeded their statutory powers. Viewed with that in mind one is unable to put the finger on any provision transgressed or

unheeded. Plaintiffs have not attempted so to do. It is true that section 6134-f1 authorizes the delivery of revenue bonds to the contractor or contractors in payment for the improvement. Clearly the implication is that there may lawfully be *one* contractor, or on the other hand, *contractors.* But if the defendants acted illegally it was because they violated section 6134-d5, the language of which is that the notice "shall state as nearly as practicable the extent of the work; the kind of materials for which bids will be received; when the work shall be done; the time when the proposals will be acted upon; * .* * " With these provisions defendants' notice in substance and in terms complied. In the section is no intimation that defendants, in showing the extent of the work, should additionally have split it up into and shown it in parts, and the same is true as to the kind of materials. If such intimation had been intended it is reasonable to believe the legislature would have laid down some guiding directions as to the manner of the splitting up. It is not within our proper functioning to inject into the act implications that cannot reasonably be accorded to the legislative branch. In Davies v. Village of Madelia, Minn., 287 N. W. 1, 5, 123 A. L. R. 569, where the plaintiff was making the same contention as in this case the court pointed out the unreasonableness of adopting plaintiffs' claim of illegality in the following language:

"Logically, if the plaintiffs' argument is sound, the specifications should likewise be offensive even if they called for bids on each unit inasmuch as there are likewise many who could bid on less than a unit but not upon a whole unit in the undertaking. There is nothing unreasonable under the facts presented in demanding that one contractor submit a bid upon the entire work. In fact, the actual result was that three submitted bids on such a basis. The council had the right and the power to make such a requirement. If the entire installation was to be paid for out of earnings, the contract could not well be let to more than one bidder."

The opinion might well have further stated that the afford-

**18**

ing of so prolific a field of litigation on account of the indefiniteness of the duties that would be imposed on town councils could not have been legislatively intended.

With respect to the remaining feature of the contract, the requirement of advancement of $8,000, no claim of illegality is made by plaintiffs, except on the question of it resulting in fewer contractors bidding. Presumably this feature appears because preliminary expenses for which the $8,000 provided could not have been advanced from any of the town's funds derived from taxation. The complaint is that that provision decreased the number of bidders. Concededly neither this feature of the contract nor the one already discussed can be said to have unreasonably restricted competitive bidding. Nevertheless, says the majority, in cumulative effect they did so restrict. In other words, put in the scales, neither weighed enough. But weighed together they weighed just enough. Surely a close calculation, but a wholly mistaken one because neither feature possessed any weight on the question of illegality, neither feature being wrongful nor illegal when viewed in the light of the act that conferred the powers that were exercised.

I would affirm the decree, holding that both features of the contract were lawful and that in making them a part of the contract the council exercised a discretion the quality of which it is not for us to question.