## MARTIN KEOGH,

### *vs.*

## THE MAYOR AND COUNCIL OF WILMINGTON.

*New Castle, Sept. T. 1872.*

There can be no doubt (in the absence of any statutory or charter regulation to the contrary) of the full discretion of any person or corporation even after bids for a proposed work have been received and opened, either wholly to abandon the work, or to alter the plan of it, or to change or amend the specifications and issue new ones.

The precise limit of judicial interference with the discretionary powers vested by the Legislature in municipal corporations or their officers is :—that the courts may interpose so far as to protect private rights when violated or threatened by the action of these bodies, also to restrain them from the assumption of powers not granted by their charters, and further, to guard the public interests against any corrupt or fraudulent abuse of the powers granted to them But where no private right is infringed and the city corporation or its officers are exercising their discretion in good faith, the court will not revise the grounds of their proceedings nor entertain the suggestion that their action is inexpedient for the public interest,

The act of bidding in response to an advertisement containing an express reservation of the right " to reject any or all bids," is of itself, a consent to this reserved right and concludes the bidder from any attempt to enforce the acceptance of his bid because it is the lowest.

The paving of streets in the City of Wilmington is a discretionary power vested by the charter in the City Council without any expressed restriction whatever, with which when exercised without bad faith or corruption, the courts have no authority to interfere.

INJUNCTION BILL.—This was a bill for an injunction to restrain the corporation of the City of Wilmington from awarding to any other person than the complainant, Martin Keogh, a contract for the macadamizing of Fourth street, and for an order that the contract be awarded to the complainant upon the terms of his bid for it made under certain proposals advertised by the Street Committee.

The material facts are these : The City Council, by a resolution adopted June 27, 1872, directed the Street Committee to advertise for proposals for paving Fourth street with macadamized pavement from Market street to the Christiana river. Pursuant to the resolution the Street Committee did advertise for proposals in the words following : "Bids will be received by the Street Committee "until Thursday, July 25, 1872, at 5 o'clock p. m., for pre-"paring the street, furnishing the material and putting "down a macadamized pavement on Fourth street, from "Market to the Christiana creek." Then follows a detailed specification of the work and a reservation to the

city of the material now on the street, after which the advertisement, as it is set forth in the bill, concludes with the reservation, viz :

" The right to reject any or all bids is reserved." This is the advertisement as contained on the printed handbill from which the bill of complaint sets it forth. In the advertisement as published in two newspapers there was a further reservation which is set forth in the answer in these words : " No bid will be accepted unless it be from " a responsible party." The complainant, within due time, put in his bid for the job at the rate of $1.42 per yard, which proved to be the lowest bid, the next highest being one by George Remington, at $1.55 per yard. Nevertheless, the Street Committee, in their report of the result to the City Council, made August 1, 1872, recommended that the contract should be awarded, not to complainant, but to Remington, upon the ground stated in the report, that the complainant had not the necessary machines for the work, and further, that he already had on hand a city contract which had been unfinished for over a year. With respect to the truth of the grounds suggested by the Street Committee for rejecting Keogh's bid, there is a conflict between the bill and the answer, but whether they were true or false is not deemed material to the decision of the cause. It appears that the City Council did not act upon the recommendation of the Street Committee to award the contract to Remington, but by a resolution adopted August 15, 1872, it rejected all the bids and directed that new ones should be advertised for upon specifications modified and different from the former ones. Under the second advertisement, which limited the time for proposals to the 5th of September, bids have been received which remain unopened pending the motion.

The cause came before the Chancellor, September 14, 1872, on a motion for a preliminary injunction, in pur-

suance of an order made on the the 5th inst., directing a hearing of the motion at Chambers, upon notice of the application to the defendant.

*O'Byrne*, for the complainant.

Municipal corporations, with reference to subjects affecting private rights or property are to be dealt with not as political bodies but as trustees. *Mulham, et al., vs. Sharp, et al.*, 15 *Barb.* 193. The equitable jurisdiction of this Court attaches when the political function ceases. *Hodges vs. Buffalo*, 2 *Denio* 110 ; *Reynolds vs. Albany*, 8 *Barb.* 597 ; *Dutton vs. Philadelphia, Leg. Int. July* 26, 1872.

The interposition of the Court may be invoked by the complainant both as contractor and as tax payer. The case cited from *Barbour* supports the latter ground as also do, *Page vs. Alban*, 8 *P. F. Smith*, 345 ; *Webster vs. Harwington*, 32 *Conn.* 131 ; *Merril vs. Plainfield*, 45 *N. H.* 126.

We seek a decree not only that the Council be restrained from taking other bids but also that the contract be awarded to complainant. *Pierce vs. New Orleans*, 18 *La.* 242 ; *McKinney vs. Philadelphia*, 6 *Phila.* 123 ; *Hobart vs. Detroit*, 7 *Am. Law, Reg.* 744.

The reserved power to reject bids inserted by the street committee was without authority and contrary to the ordinance prescribing the mode of taking proposals and providing the right to require security as a sufficient guarantee. The ordinance cannot be repealed by mere resolutions. The committee had no authority to assume complainant's inability as a ground for rejecting the bid, but could only exact security. The case of *McLaughlin vs. Kneass et al.*, 7 Phila. 634, may be cited *contra*, but there McLaughlin was "a continued and persistent" defaulter.

*S. M. Harrington,* for the defendant.

This bill shows no equity. The case of *Elmslie vs. Delaware &c.,* 4 *Whart.* 424, well illustrates the strength of equity required.

This complainant was in fault in that he knew the reservation and bid under it. The bill seeks to regulate a discretionary legislative power. The Council is a legislative body, *Charter Sec.* 27, whose power expressly includes paving streets. The entire subject is placed under its discretion. Many considerations enter into the expediency of accepting bids besides the figure at which they are made. The promptness, mode of executing, fidelity, possession of appliances, expertness and responsibility. The object of proposal is to ascertain the best man upon all these considerations, the whole resting in the exercise of a sound discretion, which is bounded only by the acts of acceptance. The objects of bids is to enable Council to judge whether the work should be done at all and whom it is expedient to employ. The principle contended for by the complainant would preclude Council from abandoning the work if all bids were too high. In the case, for example, of proposals for stone, there being few quarries and large opportunity for combination, there is extreme importance of the right to reserve the power to reject. The advertisement is merely an inquiry to inform the Council, and a proposal is of no more force than an offer at auction, which may be withdrawn before the bid is accepted. *Payne vs. Cave, 3 Term.* 148.

There must be concurrence of both bid and acceptance to be binding. In this case the rejection was proper.

1. Because the bidder was not a responsible party. 2. he had not the appliances, and, 3, he was already in default under contract.

The Council is the sole judge as to these reasons and

the Court will not review its judgment, but if it were otherwise they would be held sufficient.

To sustain an injunction against public officers, the act must be contrary to law, not to equity merely. *Kerr on. Inj.* 572 ; *Hagner vs. Heyberger*, 7 *W. & S.* 104; *Mayor of Brooklyn vs. Meserole*, 26 *Wend.* 132.

If the complainant is entitled to the contract his remedy is by mandamus ; the right being a legal one and not equitable, and he cannot restrain by injunction until he can apply for mandamus. A preliminary injunction cannot be subservient to a legal proceeding. *Morris vs. Jersey*, 1 *Beasl.* 252; *Trewin vs. Lewis*, 4 *M. & C.* 254; *Bonaparte vs. C. & A. R. R. Co.*, 1 *Baldw.* 235 ; *Atkinson vs. Phila. & Tren. R. R. Co.*, 14 *Haz. Pa. Reg.* 101, 129 ; *People and Flagg vs. Lowber*, 7 *Abb. Prac.* 177 ; *People vs. Mayor &c. of N. Y.*, 9 *Abb.* 253 ; *Witney vs. Mayor &c., of N. Y.*, 28 *Barb.* 233 ; *People vs. Mayor &c., of N. Y.*, 32 *Ib.* 35 ; *Pullman vs. Mayor &c., of N. Y.*, 54 *Ib.* 169 ; *People vs. Croton Aq. Board*, 49 *Ib.* 257. The last case is recognized as authority in *Wiggins vs. Phila.*, 2 *Brewst.* 440.

There is no law requiring Council to make proposals for a contract. The ordinance of May 25, 1872, is subject to necessary limitations, but not being a law it is not binding on the Council. It might revoke it *pro tanto*, or act irrespective of it. It is a self-imposed rule, resting in its own discretion. It applies only when the contract is given out, and does not restrain the power to change specifications or judge of a bidder's responsibility. In this case, notice was given in the advertisement of revocation *pro tanto*, and complainant acted under it.

THE CHANCELLOR :—

It is not claimed on the part of the complainant that a contract between him and the city for this work was completed by his putting in the lowest bid under the original advertisement. It is agreed that, in order to

constitute a contract binding at law, the bid must be accepted and the contract awarded accordingly. What the bill claims is that the City Council is equitably bound to award to him the contract, and that a court of equity will enforce this obligation—at least, to the extent of restraining the Council from awarding the contract to any other person.

I do not find sufficient ground for interfering with the action of the Council. There are several objections :

First. Even were it doubtful whether the City Council would be permitted to prefer a higher bidder under the first advertisement, viz : Geo. Remington, to the complainant, it does not appear that it proposes to do so. The Council did not adopt the recommendation of the street committee, but for reasons sufficient in its judgment, and which this Court is not competent to overrule, the Council abandoned the original specifications, rejecting as a consequence all the bids made under the first call for proposals, and proceeded to advertise for new bids under modified specifications. Now, however the right of the Council to prefer a higher to a lower bidder might be questioned, there can be no doubt (in the absence of any statutory or charter regulation to the contrary) of the full discretion of any person or corporation even after bids for a proposed work have been received and opened, either wholly to abandon the work, or to alter the plan of it, or to change or amend the specifications and issue new ones; otherwise there would be no protection against combinations or extravagant bidding beyond the amount of the contemplated expenditure—no remedy for defects in the plan of the work or in the specifications which the result of the biddings might disclose. Such a discretion to be, of course, fairly and honestly exercised, is universally conceded.

A case in New York, decided in 1867, *The People vs. The Croton Aqueduct, Board,* 49 *Barb. Sup. Ct. Repts.* 259, is

63—DEL. CH. IV.

very similar to the present. There, the Croton Aqueduct Board advertised for proposals to build certain works, and received bids, among others a bid from the relator, which was the lowest, but no award of the contract was made. Afterwards, the Board deemed it expedient to alter the plan of the work to be done and re-advertised for proposals in accordance with such alterations. The lowest bidder under the first call sought his remedy by mandamus, which the Court refused, affirming the general discretionary power of parties issuing proposals notwithstanding bids may have been put in and opened, until one shall have been accepted and the contract awarded. The Court say : " By the notice issued. they (the Board) did " not obligate themselves to award the work to the lowest " bidder ; and I do not understand that the issuing of pro- " posals alone and of itself created an obligation thus to " dispose of it. It was a mere notice that bids would be " received : and if perchance they happened to be extrava- " gant or far beyond the amount of the contemplated " expenditure, I think, ordinarily, there would be a discre- " tionary power to reject them altogether." That case was approved by Brewster J. in *Wiggins vs. The City of Philadelphia*, 2 *Brews. Repts.* 144. It need only be added that so long as this discretion, to reject the original specifications and proceed anew, is exercised in good faith the Court can not interfere with it.

The charter has confided this discretion to the Council, and the courts will not review the reasons of its action further than to see that the discretion is fairly and honestly exercised. The good faith and honesty of the Council in this business stands unimpeached upon the record of the cause.

But in the next place there is a feature of this case which puts beyond all question the right of the City Council to reject Keogh's bid and even to have preferred a higher bid under the original advertisement. His bid was

made subject to an express reservation to the Council of the right "to reject any or all bids" under that advertisement. He must be taken by the very act of bidding under that advertisement to have consented to this reserved right. The reservation qualifies his bid, giving it precisely the same effect as if in terms he had said to the Council, "I propose to do the work for so much, provided you "see fit to give me the job." His acceptance of the terms of the advertisement concludes him. Nor can he now, after having accepted the terms of the advertisement, go behind it, and raise the question whether the reservation by the street committee was, or was not, in conflict with the city ordinance of May 19, 1870, providing that contracts of certain kinds should be given out to the lowest bidder or bidders, etc. The ordinance is not a provision of the charter or statute ; it is not a law, obligatory upon the City Council and all concerned, but it is merely a direction from the Council to its agents—to " the " officer or committee having such business in charge"— upon a subject resting wholly in its discretion ; and any departure from the terms of the ordinance in a particular case, the Council may, if it see fit, sanction or adopt, quite as effectually as it might have ordered such exceptional proceeding in advance. The question whether the ordinance has been strictly followed is one between the Council and its officer or committee, and does not concern the bidder. His acquiescence in the reserved right, by bidding subject to it, concludes him.

This case does not raise the broad question whether the City Council, being uncontrolled on this subject by any statute or by its charter, may not in all cases, even without reserving the right, reject the lowest bid put in under an advertisement for proposals, and award the contract to a higher bidder, acting of course, with good faith to the public interest. On that point an opinion is unnecessary, and would be extra-judicial and improper.

One other subject remains to be examined. The complainant, by an amendment to his bill, alleges that he is a citizen of Wilmington and a tax payer, and in that character he seeks the injunction as a measure of protection to the public interest against the additional expense and increased taxation which may result from the action of the City Council.

I waive the question raised in argument as to who are proper parties to institute legal proceedings for the correction of abuses or breaches of trust by the municipal corporations, and will treat the case, under this branch, as properly before me. Both counsel, at the conclusion, desired that the motion be disposed of upon its merits, free from technical objections.

It will only be necessary on this point to define the limit of judicial interference with the discretionary powers vested by the Legislature in municipal corporations or their officers. The precise limit I take to be this :—that the courts may interpose so far as to protect private rights when violated or threatened by the action of these bodies, also to restrain them from the assumption of powers not granted by their charters, and further, to guard the public interests against any corrupt or fraudulent abuse of the powers granted to them. But where no private right is infringed and the City Corporation or its officers are exercising their discretion in good faith, the Court will not revise the grounds of their proceedings nor entertain the suggestion that their action is inexpedient for the public interest. This is a plain rule, easy of application, reasonably safe for the public without needlessly trammeling the bodies or officers in whom discretionary powers are vested ; and it is also a rule well settled by judicial authority. *People vs. New York*, 54 *Barbour S. C. R.* 169 ; *People and Flagg vs. Lowber*, 7 *Abbotts R.* 177 ; *Reynolds vs. Mayor of Albany*, 8 *Barbour, S. C. R.* 597 ;

*McLaughlin vs. Kneass, 7 Phila. R.* 634 ; and *Wiggins vs. Phila. 2 Brewster, R.* 444.

To apply the principle to this case :—The paving of streets in the City of Wilmington, together with a large body of other enumerated powers, is by the 27th section of the City Charter vested in the City Council. It is a discretionary power, and is confided without any expressed restriction whatever. Much argument was directed to show that the authority exercised for the paving of streets is not legislative or political, but is a trust, in the strict and proper sense, for the management and disposal of the property of the citizens, and is subject to the same rules which govern the ordinary responsibility of trustees. Be it so. The distinction is not material to this case. Either way, whether considered as an act of legislation or as the exercise of a trust in the strictest sense, the power in question is essentially discretionary. A large discretion must run through all the details of its exercise, such as the devising of suitable plans for the work, the adopting of specifications and giving out of contracts and the raising of means to pay the expenditure.

The action of the Council now drawn into question is its abandoning the original specifications of macadamizing Fourth street, rejecting the bids put in under the first call, adopting new specifications and receiving bids under them. Now as has been just decided, this proceeding violated no right, legal or equitable, of Mr. Keogh, as a bidder ; and, so far as it may concern the public interest, there is no suggestion of bad faith or corruption in the action of the City Council. It appears to have been an honest exercise of discretion in a subject-matter confided to the Council by the charter, and with which, whether it were well or ill judged for the interests of the city, the courts have no authority to interfere.

Where a discretionary power conferred by charter is found to be too large, or is at any point specially liable to

abuse, it is for the Legislature to provide proper limitasions or checks. So far as the public welfare in these matters depends upon the personal qualifications of city officers, the remedy is in the hands of the citizens at the elections. The courts, as before stated, can interpose only when necessary to protect private rights, or to restrain the assumption of powers not granted by the charter or the fraudulent or corrupt abuse of powers granted.

The motion for an injunction must be denied and the bill dismissed.

NOTE. In a case determined in the year following the present one, *Attorney General vs. Detroit*, 12 *Am. Law Reg.* (*N. S.*) 149, the principles here relied upon were also announced by the Supreme Court of Michigan. The right to interefere by injuction with an abuse of its franchise by a municipal corporation was sustained but only in a case were the public has a substantial interest in the question and a public right is concerned. In that case a "lowest bidder" endeavoured to assert his rights and to enjoin the letting of a contract to the highest bidder. It was held that even where contracts for paving streets were required *by law* to be given the lowest bidder, "Something is necessarily "left to the discretion of the City Council."

The cases are not identical, but the Michigan case will be found instructive upon this subject.

Dillon, in his latest edition of the work on Municipal Corporations, Sec. 470, considers that the contract is incomplete until the bid is accepted. And in Sec. 832, he states the doctrine that the discretion of municipal bodies cannot be controlled, even by mandamus, which he says will not lie to enforce the award of a contract to the lowest bidder. (*note* 3).