# SUPREME COURT.

THE PEOPLE *ex rel.* GEORGE MARTIN agt. WILLIAM DOR-SHEIMER and others, commissioners of the new capitol, and JAMES W. EATON, superintendent.

*New state capitol — Contracts — Meaning of lowest responsible bidder.*

It is provided by chapter 634 of Laws of 1875 (*pages* 809, 810) that all contracts for work to be done upon the new capitol shall be awarded to the lowest *bona fide* responsible bidder or bidders.

*Held,* that the statute requires the successful bidder to be a *responsible* one, that is "able to respond or to answer in accordance with what is expected or demanded," in addition to the giving of the bond for the faithful performance of the contract.

He is not to be deemed a responsible bidder because .he offers adequate security for the performance of the contract.

Where the contracting board has passed upon the *pecuniary responsibility* of a bidder, and rejected his bid because their conclusion was unfavorable to him in that particular, the court will not interfere so long as there has been no abuse of discretion.

*Special Term, April,* 1878.

MOTION for a peremptory *mandamus* to compel respondents to award a contract to the relator.

*Miller, Parker & Newcomb,* for relator.

*A. Schoonmaker, Jr.,* attorney-general, for respondents.

*Matthew Hale,* for parties to whom contract was awarded.

WESTBROOK, *J.* — The papers show that the respondents advertised for sealed proposals to do certain carpenter work

upon the new state capitol, reserving, among other things, the right to reject any bid. The relator's bid was the lowest sent in, but was rejected upon the ground of his pecuniary irresponsibility, though it is conceded that the security, which he offered in the form of a bond for the faithful performance of the work, was ample.

The application for a *mandamus* is resisted upon several affidavits showing the pecuniary condition cf the relator, and establishing the fact that in rejecting the bid the respondents passed upon the question of the relator's pecuniary responsibility, and rejected it because their conclusions was unfavorable to him in that particular. The relator insists that his bid was *bona fide*, and that he is to be deemed a responsible bidder because he offered adequate security for the performance of the contract. This claim is resisted by the respondents. Its validity depends upon chapter 634 of Laws of 1875 (*pages* 809, 810), which declares : " All contracts shall be awarded to the lowest *bona fide* responsible bidder or bidders, after being advertised by the superintendent in the state paper once in each week for four weeks consecutively, immediately preceding the letting of the contract. The notice of letting to be signed by the superintendent, who shall state the work to be let, the quality, quantity and kind of material to be bid for, and the length of time which will be given for the completion of the work or the delivery of materials, the amount of security required, the bonds to be furnished for the faithful performance of the contract."

Without elaborating the argument, it seems to be clear that the statute intended that the contractor should be a party of pecuniary responsibility, and that, in addition, he should give a bond for the faithful performance of his contract. The good sense of this (and it involves no reflection upon the poorer mechanics) is obvious. Though a. person may be able to give security to his employer, yet his ability to do and perform with promptness a heavy contract, involving large expenditures, must depend greatly upon his own resources. For this

reason, it is assumed that the statute required the successful bidder to be a "responsible" one, that is to say, "able to respond or to answer in accordance with what is expected or demanded" (*see Webster's Dictionary*), in addition to the giving of the bond for the faithful performance of the contract. Of that responsibility the contracting board must judge, While it is not held that in a clear case the court would not interfere with its action, yet it is manifest, upon a perusal of the affidavits which have been submitted, that there has been no such abuse of official discretion and judgment in this case as will justify such interference.

For the reason above stated, the peremptory *mandamus* must be refused. There is, however, another point worthy of consideration. Section 2 of chapter 7 of Laws of 1878 provides: "The said new capitol commissioners are hereby directed to take such measures as shall insure the completion and finishing of that portion of the new capitol containing the assembly chamber for occupation on the 1st day of January, 1879, by the senate and assembly." It was for the work to be done upon that portion of the new capitol containing the assembly chamber for which bids were made. Manifestly, the section gives a large discretion, for they are " directed to take such measures as shall insure the completion and finishing" of the work by a given time. To secure that end, the board has deemed it wise to discriminate as to the men to be employed. As efficiency and promptness in doing any work must depend largely upon the man who does it, having reference to his integrity, ability and responsibility, the board was authorized to discriminate between bidders. So long as there has been no abuse of discretion, but only honest action to carry out legislative will, the court will not interfere.

The motion for a peremptory *mandamus* is denied, with ten dollars costs, to be paid by the relator.