STATE OF DELAWARE, upon the relation of DANIEL McCORMICK
     vs. HARRISON W. HOWELL, Mayor of The Mayor and Council
     of Wilmington, a corporation of the State of Delaware.

1.  MUNICIPAL CORPORATIONS—CONTRACTS—CONFORMITY TO BIDS.

Where the advertisement for bids for a city garbage contract required each bidder to submit a cut of the particular kind of cart he would use, which relator, who was awarded the contract, did, the mayor will not be compelled by mandamus to sign a contract for the work which does not refer to the type of cart to be used;  the contract being different from the bid and the award.

2.  MUNICIPAL CORPORATIONS—CONTRACTS OF BOARD OF HEALTH.

If one who bid for the work of hauling city garbage, and was awarded the work by a former board of health, was entitled to have a written contract for the work executed, the contract should be drawn by the present board of health, and not that which made the award, the terms of office of whose members have expired.

3. MUNICIPAL CORPORATIONS—CONTRACTS—ACCEPTANCE OF BID.

In order to have a valid contract with a city to remove garbage, etc., the bid for the work must be accepted by it, and the contract awarded pursuant to the bid.

4. MUNICIPAL CORPORATIONS — GARBAGE CONTRACTS — NECESSITY OF WRITING.

Where an ordinance provided that all proposals for the performance of the work of removing garbage should be accompanied by a certified check on a city bank for $200 for each district as a guarantee for the proper execution of the work, which amount was to be forefeited if the successful bidder failed to execute the contract and give bond, it was contemplated that a contract for the collection and removal of garbage should be reduced to writing and signed by the parties, in order to determine the terms of the contract the bond was given to secure.

(*May* 23, 1912.)

PENNEWILL, C. J., and WOOLLEY and RICE, J. J., sitting.

*Robert G. Harman* for relator.

*Daniel O. Hastings*, City Solicitor, for respondent.

Superior Court, New Castle County, May Term, 1912.

MANDAMUS. Rule issued requiring the respondent to show cause why an alternative writ of mandamus should not issue as prayed for. Motion by respondent to discharge the rule and dismiss the proceedings in the cause for certain reasons based upon the alleged insufficiency of the relator's petition. The court in the following opinion held the reasons insufficient to prevent the issuance of the alternative writ, and the rule was made absolute.

PENNEWILL, C.J., delivering the opinion of the court:

In the above stated case a rule was issued requiring the respondent to show cause why an alternative writ of mandamus should not issue as prayed for.

The respondent moves the court to discharge the rule and dismiss the proceedings in the cause for the following reasons, based upon the alleged insufficiency of the plaintiff's petition, viz.:

(1) Because it does not show that the contract referred to has been examined and approved by the city solicitor for the mayor and council of Wilmington as provided by an ordinance of the City of Wilmington.

(2) Because it does not show that the bond with surety given by the relator has been approved by the mayor and presi-

Motion to Quash Return.

dent of council of the mayor and council of Wilmington as provided by an ordinance of the City of Wilmington.

(3)   Because it does not show that the resolution of the board of health awarding the contract to the relator was not rescinded before the said petition was filed.

The court are of the opinion that the reasons filed are not sufficient to prevent the issuance of the alternative writ, and it is therefore ordered that the rule be made absolute, and that the alternative writ issue.

The writ issued and the return thereto was filed.

### (*June*, 24, 1912.)

PENNEWILL, C. J., and WOOLLEY and RICE, J. J., sitting.

Motion by the relator to quash and strike out the return filed by the respondent to the alternative writ of mandamus for the following reasons, viz.:

1.   Because the contract relied on was awarded to the lowest and best bidder.

2.   Because the awarding of the said garbage contract belonged solely and exclusively to the board of health.

3.   Because the board of health is the body named by law to exercise full, sole and exclusive jurisdiction over such matters.

The respondent contended that no legal or binding contract was made by the city with the relator, because,

1.   When the board of health advertised for bids it unlawfully inserted in said advertisements the following language: "Bidders must submit cut and description of the style of cart or wagon to be used by them in the collection or removal of the garbage."

2.   The board of health did not lawfully award said contracts in that they were not awarded to the lowest and best bidders.

The respondent also contended that if the alleged contract was not illegal, it was nevertheless incomplete and imperfect because it was not signed by the mayor, nor had he affixed the seal of the city thereto; and that therefore the board of health had the power to rescind the action of the board which awarded the contract to the relator.

After argument, the following opinion was announced:

WOOLLEY, J., delivering the opinion of the court:

From the alternative writ of mandamus issued in this case upon the petition of the relator and from the answer filed in response thereto, it appears that the relator's right to a peremptory writ of mandamus is dependent upon the consideration and determination of a number of questions. These questions, stated somewhat in the order in which they occur, are whether there was in the first instance a lawful contract between the relator and the board of health as the contracting agency of the municipal corporation of which the respondent is mayor, respecting the collection and disposal of garbage for the fourth district of the City of Wilmington, first upon the charge of an excess of the authority of the board of health in requiring, by its advertisements for bids, that each bidder file with his bid a cut or picture of the particular type or kind of cart he would use in the event of being awarded the contract, thereby making the bidding less competitive and more uncertain, and second, upon the ground that the award was arbitrarily made.

If we should consider these questions and find that a contractual relation does in fact exist between the relator and the municipality, it would then be necessary to determine, before awarding a peremptory writ of mandamus upon the mayor to sign and seal the written contract presented, whether as a matter of law, the contract was not made and completed by the bid and award and nothing remained for the mayor to do but approve the bond. To the petition in the case of *State of Delaware, upon the relation of McCormick v. Fisher*, 5 *Penn.* 273, 64 *Atl.* 68, was appended a copy of the bid made in that case, which by express language distinctly showed that both the city and the relator contemplated that their undertakings as shown by the bid and award, should be reduced to writing and signed by them, and the court, holding the act of the mayor in such a matter to be merely ministerial, commanded him to execute the written contract. In the case under consideration, however, the bid upon which the relator claims to have been awarded the contract and bases his

right to ask this court to compel the respondent to execute it in writing, was referred to in the petition but was not filed with the petition and therefore it does not disclose to the court, as did the bid in the *Fisher case*, whether the contract was complete on the award or a subsequently written contract was contemplated and intended to be signed.

[1] Whatever may be the solution of these questions, the primary matter for determination is whether the relator, upon his own showing, is entitled to have the mayor sign and seal the particular contract which he submits with his petition for execution. It appears by the petition, as before stated, that in the advertisement for bids, each bidder was requested and required to submit a cut or picture of the particular kind or make of cart he would use in the event of being awarded the contract. The relator complied with this request and filed such a cut with his bid and was formally awarded the contract by the board of health. Whether the contract was legal in the first instance or if legal whether it was complete on the bid and award or contemplated a written instrument subsequently to be signed, we do not say, but we do say, that from the petitioner's own showing, the contract which we are asked to compel the mayor to execute, makes no reference to the type of cart the petitioner showed by his bid he would use if awarded the contract. We therefore find that the contract which we are asked to command the mayor to sign is different from the contract based upon the petitioner's bid and the award by the board of health. We therefore conclude that the petitioner has failed to show that he is entitled to the remedy for which he prays.

The motion to quash the answer is refused and the prayer for a peremptory writ of mandamus is denied.

Whereupon the above named relator, to wit, on the eighth day of July, filed five other petitions for the issuance of writs of peremptory mandamus. (Pennewill, C. J., and Woolley and Rice, J. J., sitting.) Objection was made to the issuance of rules to show cause. It was agreed by counsel that the court might consider and determine all questions that could be raised either

upon the return of the rule or upon the return to the alternative writ, etc.

In the first petition the relator asked that a rule issue requiring the former board of health "to show cause why a writ of peremptory mandamus should not issue against them requiring them to meet and draw up and present to your petitioner for execution, a written contract in accordance with the contract actually awarded by them to your petitioner."

[2]   This petition was, after argument, dismissed, for the reason that if such a contract should be drawn up and presented, it should be done by the present board.   While the terms of office of the preceding members of the board of health have expired, the board itself has not ceased to exist, but the office continued with different personnel.

In the second petition the relator asked that a rule issue, requiring Daniel O. Hastings, city solicitor, "to show cause why a writ of peremptory mandamus shall not issue against him, requiring him to draw up the said above mentioned contract."

This petition was also dismissed because it did not appear to the court that there was any law making it the duty of the city solicitor to perform such duty.

In the third petition the relator asked that a rule issue, requiring Harrison W. Howell, mayor, "to show why a writ of peremptory mandamus shall not issue against him requiring him to execute the said above mentioned contract by signing his name thereto as mayor and affixing the corporate seal of the said 'The Mayor and Council of Wilmington' thereto."

This petition being predicated upon the issuance of the writ of peremptory mandamus in the first two petitions, which being dismissed, it was also dismissed.

The fourth and fifth petitions asked that rules issue requiring the said Harrison W. Howell, mayor, as aforesaid, and Samuel H. Benson, president of council, respectively, "to show cause why a writ of peremptory mandamus shall not issue against him requiring him to approve said bond as aforesaid in accordance with law."

The last two petitions, after further consideration, were on

Argument.

the sixteenth day of July disposed of together. The facts and questions involved sufficiently appear in the opinions following the arguments of counsel.

### ARGUMENT OF COUNSEL FOR PETITIONERS.

1. The board of health alone has full, complete and exclusive control and jurisdiction in all matters pertaining to the making of contracts for the collection and removal of garbage in the City of Wilmington. *City Charter* 138; *McCormick v. Fisher*, 5 *Penn*. 273; *United States Sand Filtration v. Bird*, (1904) not reported, *New Castle County, Appearance Docket, p.* 225.

2. Where an inferior body is invested with powers that involve the exercise of judgment and discretion, the courts will never interfere with the action of said body—unless it clearly appears—

(a) That said body has acted outside of its jurisdiction,—or

(b) That said body has clearly been guilty of fraud. *Liebig Mfg. Co. v. Board of Health*, 8 *Del. Ch.* 26 (40); *Harlan and Hollingsworth v. Paschall*, 5 *Del. Ch.* 458; *Keough v. Mayor and Council*, 4 *Del. Ch.* 498; *2nd High on Injs.* §§ 1186-1247; 98 *Mass.* 431; 70 *Ill.* 65; 47 *Barb.* 64; 92 *Ill.* 372; 46 *Minn.* 542; 79 *Ga.* 807.

3. The power conferred on the board of health to award contracts for the collection and removal of garbage to the "lowest and best bidder" is a power that involves the exercise of discretion and judgment, and as it is conceded that the board of health in awarding the contract for the fourth district of the City of Wilmington, has not been guilty of fraud or wrong doing of any kind, but has acted honestly and in good faith, the courts will not interfere to annul the contract it has made. *2 Beach on Contracts*, § 1183 (1897); *High on Ext. Leg. Rems.* § 91.

"The charter has confided this discretion to the Council, and the courts will not review the reasons of its action further than to see that the discretion is fairly and honestly exercised." *Keough v. Mayor and Council, (supra); Findley v. City of Pittsburg*, 82 *Pa. St.* 351 (1876); *American Paving Co. v. Wagner*, 139 *Pa. St.* 623; *Schefbauer v. Kearney*, 57 *N. J. Law* 601 (1895); 76 *Md.* 397; 36 *O. St.* 326; *Kelly v. Chicago*, 62 *Ill.* 282; *State ex rel*

*Eaves v. Rickards*, 28 *L. R. A.* 301; *Anderson v. Board of Public Schools*, (*Mo.*) 26 *L. R. A.* 707; *People v. Doraheimer*, 55 *How. Pr.* 118; *Johnson v. Sanitary Commission*, 163 *Ill.* 287; *Wilson v. Trenton*, 60 *N. J. L.* 399; *Affirmed by Court of Errors and Appeals*, 44 *L. R. A.* 542.

4.   When the board of health asked for proposals or bids for the collection and removal of garbage in the City of Wilmington, and bids were sent to the board of health and the board of health accepted one of the bids, and "awarded the contract" to one of the bidders, the contract was complete and nothing remained to be done but for the mayor, as the official head of the municipality, to sign the said contract and affix the official or corporate seal of the municipality thereto.   1 *Dillon Munic. Corp.* § 470; *American Lighting Co. v. McCuen*, 72 *Md.* act. 706; *Keough v. Mayor and Council*, (*supra*); *Dillon Municipal Corporations*, § 470, *p.* 502.

5.   And as the signing of said contract and the affixing of the official or corporate seal thereto by the mayor, is a purely formal and ministerial act, the courts (upon his refusal to perform this ministerial duty) will compel him to do so by awarding a peremptory writ of mandamus.   14 *Am. & Eng. Ency. Law, p.* 165.


ARGUMENT OF COUNSEL FOR RESPONDENTS.

1.   The contract was illegal because when the board of health advertised for bids it unlawfully inserted in said advertisement the following language: "Bidders must submit cut and description of the style of cart or wagon to be used by them in the collection or removal of the garbage."   *Charter Laws and Ordinances of the City of Wilmington*, 796, § 11; *Packard v. Hayes*, 94 *Md.* 233; *Ertle v. Leary*, 114 *Cal.* 238; *California Improvement Co. v. Reynolds*, 123 *Cal.* 88; *Anderson v. Fuller*, 41 *Southern* 684 (*Fla.*); *Mazet v. City of Pittsburgh*, 137 *Pa.* 548; *Ricketson v. Milwaukee*, 105 *Wisc.* 591; *Gage v. City of New York*, 110 *Appellate Div. Rep.*, *Sup. Ct. N. Y.* 403; *McQuillen on Municipal Corporations*, § 1206.

2.   No legal or binding contract was made by the city with the relator because the board of health did not lawfully award

Argument.

said contract in that it was not awarded to the lowest and best bidder. *Section* 4 *Charter Laws and Ordinances of the City of Wilmington*, 797; *Coughlin v. Gleason, Mayor*, 121 *N. Y. Reports* 631; *Malloy v. New Rochelle*, 198 *N. Y.* 402; *McQuillen on Municipal Corporations*, § 1227; *Faist v. Hoboken*, 72 *N. J.* 361; *Fourmy v. Franklin*, 52 *Southern* (*La.*) 250; *Dement v. Rokker*, 126 *Ill.* 174.

To the same effect are the following cases, except some of them are based upon contracts awarded to a special class of bidders: *Shaw v. Trenton*, 49 *N. J.* 339; *Inge v. Mobile* (*Ala.*), 33 *Southern* 678; *Goddard v. Lowell*, 179 *Mass.* 496; *Lewis v. Detroit*, 139 *Mich.*, 306; *Miller v. City of Des Moines*, 143 *Iowa* 409; *Mitchell Furniture Co. v. Toole, Mont.*, 55 *L. R. A.* 644; *Adams v. Brennan*, 177 *Ill.* 194.

3. If the contract was illegal and void, or had not been completed, the board of health had a right to rescind its action in awarding the contract to the relator.

It will be observed that two days after awarding the contract by a former board of health, the succeeding board of health rescinded the action of the former board in awarding the said contract to the relator.

" All proposals for the performance of the work required under this ordinance shall be accompanied by a certified check on a bank or trust company doing business in the City of Wilmington for the sum of two hundred dollars for each and every district as a guarantee for the proper execution of the contract." *Section* 13, *Laws and Ordinances*.

In addition to the quoted provision of the ordinance the Statute of Frauds provides that no action shall be brought on a contract that is not to be performed in a year, unless the same be reduced to writing. This contract, it will be observed, runs for three years.

The contention of the respondent is that until everything contemplated by the parties and by the statute of the state and the ordinances is done, the power is reserved to either party to rescind its action. *State v. Board*, 81 *Ohio* 218; *Edgemoor Bridge Works v. Bristol*, 170 *Mass.* 528; *Dunham v. Boston*, 94 *Mass.* 375;

Argument—Opinion.

*Jersey City v. Brown,* 32 *N. J.* 504; *Eads. v Carondelet,* 42 *Mo.* 113; *Spinney v. Downing,* 108 *Cal.* 666, 41 *Pac.* 797.

4. The mayor is not compelled to execute an illegal contract and is entitled to have the court decide whether the proposed contract was in compliance with the law.

It is respectfully submitted that it was not the intent of the court in the case of *McCormick v. Fisher,* 5 *Penn.* 273, to decide the mayor was bound to execute an illegal contract.

*Section 7* of the *City Charter* makes it the duty of the mayor "to take care to have the laws and ordinances of said city faithfully executed."

5. Writ of mandamus is not the proper remedy in this case. *Lunney v. Commissioner,* 72 *N. Y.* 496; *Ryan v. Aldridge,* 83 *Hun. N. Y.* 279; *Paving Co. v. Mooney,* 4 *Appellate Div. N. Y.* 562; *Vincent v. Ellis,* 116 *Iowa* 609.

PENNEWILL, C. J., with whom concurred RICE, J., delivering the opinion of the court:

The relator claims that a contract was awarded to him by the board of health of the City of Wilmington, by resolution of said board, after the acceptance of his bid for the collection and removal of garbage in the fourth district of said city; and that such contract was complete, valid and binding at the time it was so awarded. That being a complete and valid contract it became the duty of the defendants to approve the bond executed by the relator in pursuance of the statute, the sureties therein being good and sufficient.

We do not understand it to be contended by the defendants that the sureties in said bond are not sufficient; but they do contend that they are not required to approve the bonds until the contract made by the city with the relator, through the board of health, is reduced to writing so that it may be known for what the bonds are given.

In other words, the defendants contend that the contract was not complete upon the adoption of a resolution by the board of health awarding the contract to the relator, because the law contemplates that such agreement shall be reduced to writing and

signed by the parties before it can be regarded as a complete and binding contract.

[3]   The question is not, whether the acceptance of a bid based upon an advertisement and specifications, or the adoption of a resolution formally awarding a contract to the successful bidder, may constitute a valid and binding contract. It will not be denied that a perfectly good contract may be so made.

In *Keough v. Mayor and Council*, 4 *Del. Ch.* 491, the court correctly stated: "It is agreed, that, in order to constitute a contract binding at law, the bid must be accepted, and the contract awarded accordingly."

[4]   But the question here is whether something more than that was not required before the contract could be regarded as complete.   Does not the law contemplate and require that such an agreement shall be reduced to writing and signed by the proper parties before it is binding on the city?

*Section* 13 of the ordinance provides that:

"All proposals for the performance of the work required shall be accompanied by a certified check on a bank or trust company doing business in the City of Wilmington for the sum of two hundred dollars for each and every district as a guarantee for the proper execution of the contract."

In the case of *State v. Board*, 81 *Ohio St.* 218, 90 *N. E.* 389, where the question before the court was very similar to the one here, it was said:

"In this case, under the statute cited, it is quite clear that the real substantial object to be attained, is the making of the written contract; it is the only contract authorized by the statute, and all that precedes is but preliminary to the efficient object, viz., the written contract.   Until that is executed the city is not bound. In the present case the board was authorized to bind the city by the written contract specified in the statute, but was wholly unauthorized to bind the city by any other contract."

In the case of *Jersey City v. Brown*, 32 *N. J. Law*, 504, the court said in the course of their opinion:

"Even in a case between private individuals, where no writing is required, if it appears that the parties, although they have

agreed on all the terms of their contract, mean to have them
reduced to writing and signed, before the bargain shall be con-
sidered as complete, neither party will be bound until that is done,
so long as the contract remains without any acts done under it on
either side. *Wood v. Edwards*, 19 *Johns.* (*N. Y.*) 212. The pro-
priety of this rule is still more apparent in a case where one of the
parties is acting in a public capacity, and their acts are made
binding upon a municipal corporation."

See, also, *Edge Moor Bridge Works v. Bristol*, 170 *Mass.*
528, 49 *N. E.* 918; *Dunham v. Boston*, 12 *Allen* (*Mass.*) 375.

In *Eads v. Carondelet*, 42 *Mo.* 113, it was said: "And when a
parol agreement is assented to, which it is understood between
the parties is to be put into writing, it is not binding till it is put
in that form."

To the same effect is *Spinney v. Downing*, 108 *Cal.* 666, 41
*Pac.* 797.

We think it is clear: (1) That the law contemplates that a
contract for the collection and removal of garbage shall be reduced
to writing and signed by the parties; and (2) that such was the
understanding of the parties themselves.

The provision in the ordinance requiring that the bidder shall
furnish a certified check for two hundred dollars to guarantee the
execution of the contract could have no purpose or meaning if a
written contract was not required. It will be observed that such
check is not demanded to guarantee the *performance* of the con-
tract. A bond must be given for that purpose. The expressed
purpose of the check is to secure the *execution* of the contract.
The contract meant is the contract awarded by the board of
health, and manifestly the contract to be executed is a written
contract.

In the case of *McCormick v. Fisher*, 5 *Penn.* 275, 64 *Atl.* 68,
this court held that it was the duty of the mayor to sign a contract
awarded for the collection and removal of garbage; and it appears
from the reported case that the court were of the opinion that a
written contract was necessary. It is true a bond and not a check,
was required to be given by the bidder, and the condition of the
bond was that he should, in case the contract was awarded to him,

execute an agreement under seal for the performance of the contract; and practically the same provision was contained in the specifications.

The specification in the *Fisher case* was as follows: "All proposals provided for in this section shall be accompanied by bond with approved security in the sum of five hundred dollars conditioned for the good faith of the bid."

The bond in that case provided that "if the above bounden Daniel McCormick shall have awarded to him by the said 'the mayor and council of Wilmington' the contract for which the above proposal is submitted, and shall thereupon execute an agreement under seal with said 'the mayor and council of Wilmington,' for the performance of said contract," etc.

In the present case no such bond was required, but the specification provided that "each bidder must furnish a certified check for two hundred dollars for each district with his bid as a guarantee for the proper execution of his contract, which amount shall be forfeited by the bidder if the contract be awarded him and he fails to execute the contract and give bond."

We think the specification and bond in the one case, and the specification and check in the other, alike clearly indicated that the contract should be reduced to writing so that it might be signed or executed by the person to whom the contract should be awarded.

It is equally clear, we think, that the parties themselves understood and expected that the contract should be reduced to writing and signed by the respective parties.

Clearly such was the expectation of the board of health or city, because the board, after awarding the contract, instructed its secretary to prepare the contract, have the successful bidder execute the same, and then send it to the mayor for his signature. The relator did in fact execute the written contract, and sought by a mandamus proceeding to compel the mayor to sign it also.

There is nothing to show that the parties, or either of them, understood that the contract was complete when the board of health by vote, or resolution, awarded the contract to the relator. The facts, including the conduct of the parties, showed the con-

trary. It does not appear even that the action of the board was communicated to the bidder as a contract, or that it was intended to be so. On the contrary, it was to be communicated to the bidder and to the mayor in the form of a written contract, which was to be signed by them. The action of the board clearly contemplated the written contract as the only contract which the city was to make with the plaintiff and the conduct of the relator as clearly showed that such was his understanding.

It may be also said that a written contract was necessary because of the difficulty, if not impossibility, of discovering from the specifications, advertisement, bid and acceptance, what the contract embraced. For example, the specifications provided for a water-tight cart, but of no particular name, but the board approved the "Holzberg" cart specifically. It would seem impossible, if the contract was not reduced to writing, for the sureties in the bond given to secure the performance of the contract, to know what their undertaking really was; or for the mayor and president of council to tell, when asked to approve the bond, just what the bond was given for.

The practice has been to reduce such contracts to writing; the understanding has been that they should be reduced to writing, and we think such practice and understanding is warranted by the law.

While the matter before the court, is the rule to show cause why a peremptory writ of mandamus should not issue, it was agreed by counsel, in order to secure an early decision of the cases, that the court might in this preliminary proceeding consider and determine all questions that could be raised upon the return of the rule, or upon the defendants' return to the alternative writ.

It was further agreed that in the determination of such questions the court might consider the oral arguments made, and briefs filed, by counsel in a recent action of mandamus between the same parties in this court, as well as any facts disclosed by the record in that case which are pertinent to the present case and not shown by the petition for the rule now under consideration.

It is because of this agreement that we have taken into consideration certain facts which do not appear in said petition.

Dissenting Opinion.

Inasmuch as a written contract was contemplated by the ordinance as well as by the parties, and no such contract was executed, we are of the opinion that this court could not direct the defendants to approve the bonds in question, and the petitions before the court are therefore dismissed.

WOOLLEY, J., (dissenting): My dissent from the opinion of the majority of the court has its origin in one point of difference between my associates and myself. With them I agree that the statutes and ordinances providing for the collection and disposal of garbage in the City of Wilmington intend that contracts made by authority thereof and covering a period of three years in their operation shall be in writing, but the point at which our views diverge is whether such contracts in writing may be made and completed by advertisements, bids and awards, or, to be complete, must the terms of the advertisements, bids and awards be thereafter rewritten in formal instruments and signed by the contracting parties. To the latter view, upon the case of *McCormick v. Fisher*, as an authority, the majority of the court adhere, while I hold to either view, not upon the authority of *McCormick v. Fisher*, but according as the intention of the contracting parties to enter into either kind of a contract is expressed and made known by them.

The *Fisher case* disclosed one thing and decided another. It disclosed the fact that there is in our city laws no legal requirement that city contracts for the collection of garbage shall be in writing and signed by the mayor, and it decided that when a contract is made by the city through one of its contracting agencies, and the city and the other contracting party intend the contract to be signed and sealed by them, the mayor, who is empowered by law to affix the seal of the municipal corporation, but who is not given an option or discretion in that regard, may be commanded to execute the instrument, and that his act in that respect is purely ministerial. The court in the *Fisher case* in no sense held, that under the ordinances of the City of Wilmington, a contract for the removal of garbage must be reduced to such a writing as the mayor may sign or be compelled to sign, and it went no further

than to hold that when the city, through its legally constituted contracting agency, entered into a contract that was intended by the city to be put into writing and executed by the city, it was the business of the mayor to sign and seal the contract for the city, whether he liked it or not.

This being the effect and the extent of the decision in the *Fisher case*, an examination of the bid and award in the *Fisher case* and the bid and award in this case, make the two cases readily distinguishable.

In the *Fisher case*, it appears that the council, then the agency of the city authorized by law to contract for the removal of garbage, supplied the bidder with a blank form upon which he was required to make his bid. Upon that form he made his bid and from that form it appears that both the bidder and the council contemplated in the event of the award being made to him, that a contract should thereafter be prepared and signed by the mayor. There is no doubt about this, for the bid says so. Therefore, in that case there was nothing for the court to do but command the mayor to sign the contract.

The bid in this case was likewise made upon a blank form supplied the bidder by the board of health, now the agency of the city authorized by law to contract for the removal of garbage. Upon that blank form the bid was made by the relator and the bid as made contains nothing, either by expression or implication, that indicates or suggests the contemplation of a subsequently prepared written instrument to be signed by the mayor.

By the award in the *Fisher case*, the council accepted the bid, one of the terms of which provided for an instrument to be signed by the mayor. By the award in this case, the board of health accepted the bid, none of the terms of which provided for an instrument to be signed by the mayor, or provided for anything further to be done. The award in neither case varied the terms of the bid and in each case amounted to an unconditional acceptance of an offer.

There is abundant authority to sustain the proposition that, in the absence of express requirements of statutes or ordinances to the contrary, a department of a municipal government, having

power to contract for the municipality, may make and complete contracts upon bids and awards and to an extent that will satisfy the statute of frauds, when the bids are in writing and the awards are written in the minutes of the body. When such a contract is made between parties having legal capacity to propose and accept, the contract is complete upon the proposal and acceptance, unless, indeed, it appear that the parties considered the offer and its acceptance as preliminary to something subsequently to be done. In this particular case there is not a word in the bid and award to indicate that a subsequent writing was intended; there is nothing to suggest the need of such a writing, for all that such a writing could contain is already written, and anything more or less than is already written in the advertisement, bid and award, if put into a subsequently written instrument, would make that instrument present a contract different from the one into which the parties in fact entered. The complete character of the contract is not affected by its lack of formality, so long as the parties have the power to contract and neither the parties nor the ordinances require a formal written instrument to be signed by the mayor. I am therefore of opinion that, in the absence of fraud, failure to exercise a discretion, or other matter not appearing in the record that might invalidate the agreement, the contract between the relator and the city was complete when the bid was accepted and the award made.

The prayer of the petition being that the mayor be compelled to approve the bond offered by the relator to insure the performance of the contract, it is urged that unless there is a written contract signed by the mayor there is nothing to which the condition of such a bond may relate or upon which the condition of such a bond may be predicated. As a written instrument, prepared with strict regard to legal formalities, signed by the chief magistrate of the municipal government, and sealed with the seal of the municipal corporation, could legally contain nothing more and nothing less than what is already contained in the advertisement, bid and award made by the relator and the board of health, it appears to me that the condition of the bond can relate to the terms and undertakings expressed in those instruments with as

much legal precision as though the same terms and undertakings were again expressed in another instrument.

I am of opinion that, upon the case as presented by the petition, the rule should be made absolute and the alternative writ of mandamus should issue.