CHARLES E. TAYLOR, FRANCIS K. FARMER and HUGH DUFFY,

*vs.*

SAMUEL K. SMITH, WILLIAM B. MEGEAR, I. PUSEY WICKERSHAM, constituting and composing the "Department of Public Safety for the City of Wilmington", and SAMUEL J. WHITE, Treasurer of the City of Wilmington, and THE MAYOR AND COUNCIL OF WILMINGTON, and VOLUNTEER FIREMEN'S City RELIEF ASSOCIATION.

*New Castle, Oct.* 13, 1921.

An oral motion to dissolve a temporary injunction cannot be acted on without notice to the complainants.

The ordinance of the City of Wilmington requiring that bids for labor and material be "publicly invited" was not repealed by an ordinance giving a printing committee discretion to say when, where and in what manner advertisements for contracts shall be made.

The ordinance of the City of Wilmington requiring that bids for work and material be publicly invited was binding on the Department of Public Safety, notwithstanding that a new city council was elected after the ordinance was passed.

Legislative power of a municipality, expressing itself through its council, is inferior and subordinate to the legislative power of the state, whose creature it is, and, if there is conflict between a statute and an ordinance, the statute prevails.

Act March 16, 1921 (32 *Del. Laws, c.* 111), creating a Department of Public Safety for the City of Wilmington, and providing for the establishment by it of a fire department, by taking over the property of fire companies does by *Section* 5 thereof relieve such department from publicly inviting bids when purchasing fire hose, engines, trucks, etc., from persons other than existing fire companies, in view of a general ordinance of such city requiring that bids be publicly invited.

INJUNCTION BILL. In August last this cause was before the Chancellor, when disposition was made of a rule to show cause why a preliminary injuction should not issue. *Ante p. 39,* 115 *Atl.* 405. After hearing, the preliminary writ was ordered, but not to the full extent prayed for by the complainants. For the facts and the issues, reference may be had to the opinion appearing at the page above indicated.

A motion is now made to dissolve the preliminary injunction heretofore issued, because (1) the ordinance authorizing the sale of the bonds has been repealed; and (2) the ordinance of the city requiring that bids for work, labor, goods, chattels, wares, merchandise, etc., the cost of which will probably exceed fifty dollars, shall be publicly invited and awarded to the lowest bidder, is not applicable to the Department of Public Safety in its attempted purchase of the fire hose, trucks and engines mentioned in the bill, which attempted purchase was preliminarily restrained. The ordinance is quoted in full in the opinion heretofore filed in this cause.

*Robert G. Harman,* for the complainants.

*Reuben Satterthwaite, Jr.,* City Solicitor, and *Percy Warren Green,* Assistant City Solicitor, for the defendants.

THE CHANCELLOR. First. The motion that the preliminary injunction be dissolved because the ordinance authorizing the bond issue has been repealed, cannot now be acted upon for

the reason that the same was orally made at the hearing, without notice to the complainants. The motion has since been made in writing, and after opportunity is given to the complainants' solicitor to be heard, will be passed upon.

Second. The facts concerning the attempted purchase by the Department of Public Safety of fire hose, trucks and engines will not be repeated, reference being had to the prior opinion above mentioned.

The motion to dissolve the preliminary injunction against the purchase of these articles is predicated on three contentions:

(a) The ordinance of the city, passed in the year 1870, which may be described as the competitive bid ordinance, has been repealed by a later ordinance passed January 18, 1883. This latter ordinance is entitled "An ordinance defining the duties of the printing committee." It provides, in part, as follows:

"*Section* 1. There shall be elected annually a committee consisting of three members of Council, to be entitled 'the Printing Committee.'

"*Section* 2. That it shall be the duty of the printing committee to superintend and direct all printing that may be necessary in the different departments of the city government. Whenever any officer, committee or department of the city shall require printed books, blanks, forms or other printed matter they shall be furnished as directed by said printing committee.

·˙ "*Section* 3. Said committee shall direct and control the necessary advertisements for sealed proposals for public work or contract of any kind whatsoever, and it shall be left to the discretion of the members of said committee to say when, where and in what manner such advertisements shall be made.

*        *        *        *        *        *

"*Section* 5. That all ordinances and parts of ordinances inconsistent herewith are hereby repealed."

The contention is made that the provision in *Section 3* of this ordinance, leaving it in the discretion of the printing committee of the Council to say when, where and in what manner advertisements for sealed proposals for any public work or contract of any kind shall be made, is so inconsistent with the ordinance of 1870, requiring that bids be publicly invited and the same awarded to the lowest bidder, that the latter is repealed.

This is untenable. There is no conflict between the two ordinances. The one of 1870, while it requires the publicly invit-

ing of bids, makes no provision as to the details of when, how and in what manner the bids shall be invited. They are to be "publicly" invited, whether by advertising, or in what manner, or when, is not provided. If the ordinance of 1883 may be said in any wise to affect or relate to the one of 1870, the most that can be said is that the former was meant to supplement the latter by conferring on a committee of the Council the authority to determine the detailed manner in which the publicity required in the ordinance of 1870 should be secured. But I am not called upon to decide whether the ordinance of 1883, does in fact affect the one of 1870. If it does, it is clear that it does not do so to the extent of a repeal thereof.

(b) It is further contended by the defendants that one City Council, by the passage of an ordinance requiring that bids be publicly invited, cannot thereby bind another City Council elected after the expiration of the terms of the members who passed such ordinance. *Bunker v. City of Hutchinson,* 74 *Kan.* 651, 87 *Pac.* 885, and certain *obiter dicta* in *Keogh v. Mayor, etc., of Wilminton,* 4 *Del. Ch.* 491, are cited in support of this proposition.

If the principle thus contended for be fully conceded, the court is not aided thereby in determining this particular motion, for, in this case, it was not the Council, the lawmaking body for the city, that undertook to purchase the fire hose, trucks and engines in question. It was the Department of Public Safety. Had it been the Council that disregarded the ordinance, then the principle contended for under this head would be pertinent.

(c) It is further contended that the Department of Public Safety was not required to observe the requirements of the ordinance of 1870, because the language of *Section* 5 of the Act of the General Assembly (*Chapter* 111, *Vol.* 32, *Laws of Delaware*) indicates that it was the intention of the General Assembly of the State to authorize the department to acquire such property as is here involved at such prices and in such manner as it saw fit in the exercise of its discretion, and that therefore the ordinance requiring that bids be publicly invited and awarded to the lowest bidder is not binding on the department.

This contention rests on the proposition that the legislative power of the municipality of Wilmington, expressing itself through

the Council, is inferior and subordinate to the legislative power of the state, whose creature it is. This proposition is, of course, beyond dispute.

The only question that calls for consideration deals not with the correctness of the principle, but with its applicability, and this in turn involves a construction of the legislative language employed in the section referred to. If under a proper construction of said section it appears to have been the legislative intent that the matter of purchasing fire equipment, the price to be paid therefor, the manner of purchase, etc., were vested in the discretion of the Department of Public Safety, then an ordinance of the city limiting the right to purchase to those cases only where a lowest bidder has been ascertained after a public inviting of bids, must give way. For if there be conflict between the statute and the ordinance, the statute prevails.

Is there such conflict in this case? Before answering this question, it will not be out of place for me to mention that when this matter was before the court at the prior hearing the particular view of it now presented was not mentioned, or, if it was, it was so cursorily referred to as to entirely escape attention, the argument then being that *Section* 9 of the act was of such nature as to indicate the legislative intent that the ordinance was not yet operative on the department, but only so when the department shall have become fully established; that is to say, at a future time. *Section* 5 and its significance in connection with the point now being discussed, was neither urged in the argument, nor noticed in the opinion.

On the pending motion to dissolve the preliminary injunction, the point is now urged, that by reason of the language of *Section* 5 the competitive bid ordinance must be held to be inapplicable to the contracts for the purchase of fire hose, engines and trucks. There is nothing in the prior opinion that holds against this contention; and, even if there were, the court ought not to hesitate to refuse to adhere thereto if, on further consideration, there should appear to have been an error of view.

I now recur to the question before me, viz.: Is there anything in *Section* 5 of the Act of the General Assembly creating the Department of Public Safety which indicates an intent to vest full discretion in the department to make such contracts as those in

question, free from the restraints imposed upon officers of the city by the ordinance of 1870?

The ordinance forbids officers and committees to make contracts for the city unless sealed proposals for the same are publicly invited and the contracts given to the lowest bidder or bidders. *Section* 5 of the Act approved March 16, 1921, provides, as follows:

"*Section* 5. That on and after the first day of May, A. D. 1921, 'The Mayor and Council of Wilmington' is hereby authorized and empowered through the agency of the 'Department of Public Safety' hereby created, constituted and appointed, and their successors in office, to prepare a plan for the establishment of a fire department for said city, and the estimated cost thereof, and to take over for public use, by purchase, compromise, condemnation as hereinafter provided, or otherwise, such real and personal property of the several fire companies of the City of Wilmington, Delaware, as were in existence and recognized by 'The Mayor and Council of Wilmington' as a part of the fire department of the said city, on September first, A. D. 1918, as a competent appraiser, or appraisers, may deem worthy of being used in a fire department of a city of its class, together with such other property as may be necessary, at such price or prices as may be determined in any of the above proceedings, or agreed upon by the Department of Public Safety in agreements to purchase the same. If said plan is approved by 'The Council,' of 'The Mayor and Council of Wilmington,' the said Department of Public Safety shall proceed to acquire by gift, purchase, condemnation as hereinafter provided, or otherwise, such real and personal property as may be contemplated in said plan. Any fire company may reserve the right to accept or reject the amount agreed upon by the appraisers."

I understand the City Solicitor, who appears for the defendants, to contend that this section removes the Department of Public Safety from the operation of the ordinance of 1870 for two reasons. His first reason is, that the legislative direction that the Mayor and Council shall do the work "through the agency of the Department of Public Safety," indicates an intent to set the department up as a body entirely free from restraint on the part of the legislative body of the city, to-wit, the Council, and untrammeled by any restrictions that may be, or may have been, imposed by the Council, insofar as the work of purchasing the property necessary for the new paid fire department of the city is concerned. Two cases are cited in support of this contention—*Greene v. Mayor, etc., of New York City,* 60 N. Y. 303, and *Guidet v. Mayor, etc., of New York City,* 12 *Hun (N. Y.)* 566.

The *Greene Case* decided that the charter provisions of New York City requiring, in substance, that contracts should be founded on sealed bids or proposals made in compliance with public notice duly advertised in newspapers, is applicable only to contracts made or let by authority of the common council, and, therefore, is not applicable to a contract made by the commissioner of public works, who was the agent designated and authorized by the Legislature of the state to do the particular work in question. The case, in the particular for which it was cited, turns on the construction of *Section* 104 of the charter, the Court of Appeals holding that, though the language in the second sentence of the section requiring advertising for proposals was general in its application to all contracts on behalf of the city, yet the first sentence of the section, limiting the class of contracts to those "made or let by authority of the common council," restricted the meaning of the general language to contracts made by the council only. The *Guidet Case* seems to be to the same effect.

These cases are manifestly not pertinent to the question before me. If the ordinance of 1870 were a charter provision, and so worded as to explicitly, or by necessary implication, apply to contracts made by the Council only, then the New York cases would be of value. But such is not the situation.

I am not prepared to hold that, because the Legislature named the particular agency through which the city was to do the work of setting up its paid fire department, therefore it is to be inferred that such agency could not be regulated in any wise by such an ordinance of Council as that referred to. If this were the sole reason advanced, I should hold against it. To do otherwise would attach too much significance to the mere act of designating an agency for the city. The more sensible view is that the Legislature, in creating offices or departments for the city, intends that such new officer and department shall fall harmoniously into the general scheme of the municipal law properly applicable to them. If such is not the case in any particular instance, then the reason therefor must be sought elsewhere.

Is there, therefore, anything else in *Section* 5 which indicates a legislative intent, that, in setting up the new fire department, the provisions of the ordinance of 1870 should not operate upon the

Department of Public Safety? This brings me to consideration of the second ccntention made by the City Solicitor.

The section authorizes the new department "to take over for public use, by purchase, compromise, condemnation as hereinafter provided, or otherwise," the real and personal property of the existing volunteer fire companies, *"together with such other property as may be necessary, at such price or prices as may be determined in any of the above proceedings, or agreed upon by the Department of Public Safety in agreements to purchase the same."* etc.

Manifestly, as to the specific property of the existing companies, which are volunteer companies, the ordinance of 1870 can have no application, because in the purchase of these there can be no opportunity for the receiving of competitive bids. But the section does not stop with the naming of this property of the volunteer companies. It authorizes the acquisition of such other property as may be necessary. The fire hose, engines and trucks, the purchase of which has been restrained, do not belong to any of the existing companies. They fall in the category of "such other property as may be necessary."

How shall such other property be acquired? The ordinance, if applicable, says only after publicly inviting bids and then only from the lowest bidder. The Act of the General Assembly says, by purchase, compromise, condemnation, or otherwise, at such price or prices as may be determined in any of the above ways, or agreed upon by the Department of Public Safety in agreements to purchase the same.

The language of the legislative act can hardly be more general in its terms. Every conceivable manner of arriving at the price is authorized. If the price is to be ascertained only as a result of publicly inviting proposals and ascertaining the lowest bidder, it is difficult to understand why the Legislature employed the language it did. The department may fix the price by compromise, or by agreements to purchase. It seems manifest that the General Assembly intended that the new department should, in acquiring the necessary property for its establishment, be permitted to receive the advantage of negotiation and bargaining. Yet such advantage could not be secured, if the rigid requirements of the ordinance were to be observed.

It seems to the court, therefore, that there is a conflict between the legislative will of the state, as expressed in *Section* 5 of the act and the legislative will of the city as expressed in the ordinance of 1870. The latter must succumb to the former.

The solicitor for the complainants advances the suggestion that there was not a full conflict, for, he contended, it might well be that the ordinance could stand to the extent of requiring that proposals be publicly invited, and the benefit of negotiation as it was claimed was contemplated by *Section* 5 at the same time secured by the department's bargaining with the lowest bidder. Indeed, it was also suggested that the ordinance might prevail to the extent of requiring that bids be publicly invited, but disregarded in the matter of awarding the contract to the lowest bidder in case it would be more to the interest of the city to do so.

These suggestions are not sound. If bids are invited and the lowest bidder ascertained, it is not to be expected that he would be responsive to bargaining or compromising at a lower price than his bid. The Legislature surely did not contemplate such a possibility when it employed the language it did in *Section* 5. And, too, the ordinance cannot be divided in its operation. If a proposed purchase must be after publicly inviting bids, it must also be from the lowest bidder. Once the ordinance is applicable, it operates to the fullest extent, and, the bids being invited, the contract cannot be awarded to one of the higher bidders.

In view of the foregoing, the preliminary injunction will be dissolved in so far as it restrains the carrying out of the contracts for the purchase of fire hose, engines and trucks.

Let an order be prepared accordingly.